231 So.2d 629 (1970)
Russell B. FRAZIER and Estelle K. Frazier, His Wife
v.
Fred S. JACKSON and New York Fire & Marine Underwriters, Inc.
No. 3772.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 1970.
Rehearing Denied March 9, 1970.
*630 George T. Oubre, Norco, for Russell B. Frazier and Estelle K. Frazier, his wife, plaintiffs-appellants.
W. K. Christovich, Christovich & Kearney, New Orleans, for Fred S. Jackson and New York Fire & Marine Underwriters, Inc., defendants-appellees.
C. Gordon Johnson, Jr., Porteous, Toledano, Hainkel & Johnson, New Orleans, for State Farm Mut. Automobile Ins. Co., defendants-appellees.
Before SAMUEL, CHASEZ and DOMENGEAUX, JJ.
CHASEZ, Judge.
This is an appeal from a judgment dismissing a suit for damages filed by plaintiffs at their cost, which damages were the result of an automobile collision.
The facts are that on December 4, 1965, in Norco, Louisiana, plaintiffs, Russell B. Frazier and Estelle K. Frazier, had stopped in the left, northbound lane of U.S. 61 in order to make a left turn onto Good Hope Street when their automobile was struck in the rear by defendant's vehicle. Mrs. Frazier was driving and she testified that she slowed and gave the proper turn signal. There was no question as to the negligence of the striking vehicle, or that the negligence was the sole proximate cause of the accident. The only question with reference to liability and in fact the only question before this court is in simple terms, who was driving the car? Plaintiffs alleged in their original petition that on information and belief the owner of the car, Fred S. Jackson, was driving and in the alternative that if Fred S. Jackson was not the driver, then whoever was driving was doing so with either the implied or expressed consent of the owner. Plaintiffs joined as defendant Fred S. Jackson and his insurer, New York Fire & Marine Underwriters, *631 Inc. (hereafter referred to as New York Fire).
Defendants Fred S. Jackson and New York Fire answered denying that Fred S. Jackson was an occupant of the car or that he had given permission or consent to anyone and in fact that the car had been stolen, therefore denying coverage of Jackson's policy either directly or through the "omnibus clause" of the policy.
By way of supplemental and amending petition the plaintiffs joined as a defendant their own insurer, State Farm Insurance Co. (hereafter referred to as State Farm), under the uninsured motorist provision of that policy as an alternative plea if the court found that Fred S. Jackson's policy would not afford coverage because either Jackson was not driving or did not give permission to whomever was driving. State Farm answered the supplemental petition and admitted being the insurer of plaintiffs but denied coverage under the uninsured motorist provision.
The trial court found that Fred S. Jackson was not driving the car and that he did not give permission to anyone to drive his car, therefore neither Jackson nor his insurer, New York Fire were liable under Jackson's policy. The court a quo found further that there was no evidence at all to prove coverage under the uninsured motorist provision of plaintiffs' insurance policy and dismissed plaintiffs' suit.
Our attention will be directed first to the conclusion of the trial judge that Fred S. Jackson was not driving the car.
Mrs. Frazier testified that she could not be positive that the defendant, Fred S. Jackson, was the man she saw driving the car on the date of the accident. She said it looked like him. She also said it had been eighteen months since the accident. She stated that after the accident both cars were moved over to the shoulder off the road and that was when she saw the driver of the other car; that he got out of the car but she did not speak to him and that by the time the police arrived the driver of the car had disappeared from the scene and could no longer be found.
Mr. Frazier testified that he too saw the driver of the car but he did not speak to him either. He stated that he went into a place to make a telephone call for someone to come after him and his wife and that when he returned the man was gone. At the trial he could not be positive that Fred S. Jackson was the driver but "it looked like him. If it wasn't him, it must have been a twin brother." Mr. Frazier testified that he discovered who owned the car by looking at the registration certificate that he found in the glove compartment and saw that it was registered to Fred Jackson of Esplanade Avenue in New Orleans. He also testified that when he tried to telephone Fred Jackson at that address he was informed that Mr. Jackson no longer lived there, which indeed he did not, as will be shown below.
Mr. Fred S. Jackson testified that at the time of the accident he lived in Bay St. Louis, Mississippi; that he had moved from the New Orleans address some time prior to the accident. He stated that on the day of the accident he and two workers were pouring a concrete sidewalk adjacent to his home in Bay St. Louis. Mr. Jackson testified that on the day of the accident he received a call from his brother, Woodrow Jackson, who told him that he would come to see him and would bring a Mr. Granville Boucher along because Fred Jackson owed Mr. Boucher some money for work done on a construction job.
Woodrow Jackson and Granville Boucher arrived in Bay St. Louis in the early afternoon. Mr. Boucher was paid and the men went outside. It is unclear as to whether the brother, Woodrow, and Granville Boucher were assisting Fred Jackson in *632 pouring the concrete for the sidewalk. It suffices to say they were present. This activity continued into the afternoon. Along with the labor Fred Jackson offered a bottle of liquor or perhaps several. It became necessary to obtain more concrete. This was done and when the truck attempted to pour the concrete the 1965 Caprice of Fred Jackson was in the way. Fred Jackson testified that his brother Woodrow moved the car but instead of backing it out of the way he went out through the gate, down the road and that was the last Fred Jackson saw of his car until after the accident.
Mr. and Mrs. Fred Jackson both testified that they were at their home in Bay St. Louis the entire day on the day of the accident, did not leave home, but in fact were working on the sidewalk until well after dark. This testimony is corroborated by the testimony of Granville Boucher, a disinterested witness, who testified that he and Woodrow had gone to Bay St. Louis that day in his (Boucher's) car; that he was paid and then "hung around" to talk to Fred Jackson and the workers because he knew them; that when he left, which was well after dark, Woodrow had been gone for some time; and that Fred Jackson was present at all times.
It is obvious from the foregoing narrative of facts that Fred S. Jackson was not the driver of the car and was not even in Louisiana on the day the accident occurred. This conclusion eliminates Fred Jackson from liability and also absolves his insurer, New York Fire, unless Woodrow Jackson was a permittee of Fred's and the policy would then be applicable through the omnibus provision contained in it.
Both Fred S. Jackson and his wife testified that Woodrow had not driven the car and was not allowed to drive it and was told specifically not to drive it. The close relationship of brotherhood does not necessarily imply permission to use the car. Emmco Insurance Company v. Alexander, La.App., 224 So.2d 114 (4th Cir. 1969). Plaintiff has argued that it is enough for the permittee to be given original permission to use the car even though his use may then vary from the original use. This is of course the law in our state. McConnell v. Travelers Indemnity Company, 248 La. 509, 180 So.2d 406 (1965) and authorities cited therein. However, Woodrow was not given permission to use the car within the meaning of this rule. It is not clear from the record whether Woodrow was told to move the car or whether he volunteered, but in either case he was not given permission to use the car. He was to move it so the concrete could be poured. As he was driving out through the gate Mr. Fred Jackson and Mrs. Jackson yelled at him to bring the car back and not to leave with it.
The position of Fred Jackson that he did not give Woodrow Jackson permission to use the car is fortified by the fact that on the same night Fred called the police and reported the car as stolen. A few days later he filed a formal complaint against Woodrow and signed an affidavit before a Justice of the Peace in Mississippi, that Woodrow Jackson had stolen his car. The above factors considered it is readily apparent that Woodrow Jackson was not driving the 1965 Chevrolet belonging to Fred Jackson with Fred Jackson's permission and the omnibus provisions in the New York Fire policy are clearly inapplicable.
The only possible coverage remaining then is under the uninsured motorist provision of plaintiffs' own policy with State Farm.
Plaintiffs have argued that the uninsured motorist provision affords them coverage because one type of protection *633 offered under this provision is against a "hit-and-run automobile". This protection is provided and the policy defines a "hitand-run automobile" as follows:
"* * * `hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such `hit-and-run automobile'; (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (c) at the company's request, the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."
A careful reading of this clause will sustain the conclusion that the provision is not applicable. Section (a) defines "hit-and-run automobile" as one of which the identity of neither the driver nor the owner can be ascertained. Mr. Frazier himself testified that he looked in the glove compartment and found the registration papers which showed the owner to be Fred S. Jackson, the defendant herein.
In light of all the foregoing facts this court is constrained to affirm the judgment of the trial court dismissing plaintiffs' suit at their cost and to assess plaintiffs with costs of this appeal.
Affirmed.