697 So.2d 868 (1997)
Rudolph MASSA and Kristen Massa, Appellants,
v.
SOUTHERN HERITAGE INSURANCE COMPANY, Appellee.
No. 95-4063.
District Court of Appeal of Florida, Fourth District.
June 4, 1997.
Rehearing, Rehearing, and Certification Denied August 27, 1997.
*869 Steven M. Weinger and Jonathan Morton of Kurzban, Kurzban, Weinger & Tetzeli, P.A., Miami, for appellants.
Geralyn M. Passaro and Steven C. Simon of Peters, Robertson, Lax, Parsons, Welcher, Mowers & Passaro, P.A., Fort Lauderdale, for appellee.
Rehearing, Rehearing En Banc, and Certification Denied August 27, 1997.
GLICKSTEIN, Judge.
Final summary judgment was entered against appellants in this action against their uninsured motorist insurer. We reverse and remand for jury trial, as sought by appellants.
The trial court's judgment recites, in part:
2. That based upon the deposition of the Plaintiff, RUDOLPH MASSA, he was driving his vehicle on March 12, 1993 when the vehicle in front of him abruptly stopped to make a turn into a gas station.
3. That based upon the deposition of the Plaintiff, RUDOLPH MASSA, in order to avoid impact with the vehicle, he slammed on his brakes. There was no physical contact between RUDOLPH MASSA'S body and his own vehicle and no physical contact between RUDOLPH MASSA'S vehicle with any other vehicle or object.
4. That based upon the deposition of the Plaintiff, RUDOLPH MASSA, after his vehicle came to a stop, thereby avoiding collision, he drove away from the scene. The driver of the other vehicle has never been identified.
5. That based upon uncontroverted testimony, this Court concludes that because there was no physical contact or impact by RUDOLPH MASSA'S vehicle with any object whatsoever, the subject incident did not involve a "hit and run" vehicle. Therefore, as a matter of law the subject policy does not afford uninsured motorists coverage to the Plaintiffs. L.P. Sims v. American Hardware Mutual Insurance Company, 429 So.2d 21 (Fla. 2d DCA 1982); Brown v. Progressive Mutual Insurance Company, 249 So.2d 429 (Fla.1971).
6. That based upon uncontroverted testimony, this Court concludes that the identity of the driver of the unknown vehicle was ascertainable, but was not identified since RUDOLPH MASSA drove away from the area without stopping. According to the subject policy, uninsured motorists coverage is only provided when an accident involves a "hit and run vehicle whose operator or owner cannot be identified...". Since the vehicle could have been identified, as a matter of law the subject policy does not afford uninsured motorists coverage to the Plaintiffs. McKay v. Highlands Insurance Company, 287 So.2d 393 (Fla. 3d DCA 1973); Hart v. Doe, 261 S.C. 116, 198 S.E.2d 526 [(1973)]; Simmons v. Motor Vehicle Accident Indemnification Corporation, 44 A.D.2d 673, 354 N.Y.S.2d 642 [(1974)].
7. That based upon uncontroverted testimony, this Court finds that the accident cannot be proved by competent evidence other than the testimony of the Plaintiffs, as required by Part C  Uninsured Motorists Coverage Florida, section C, paragraph 3 of the subject policy. Other than the Plaintiffs' testimony, the only other evidence to support the facts of the alleged accident is an unsworn and unnotorized statement of Frank Massa, who is now deceased. Pursuant to the Florida Evidence Code, this statement cannot be used to prove the facts of the accident. Therefore, as a matter of law the subject policy *870 does not afford uninsured motorists coverage to the Plaintiffs.
While we agree with the first three paragraphs, we respectfully disagree with the next three.
Taking paragraphs 5, 6 and 7 of the summary final judgment in order, the first issue for our review is whether the absence of contact by the injured appellant with any object precludes recovery.[1] We hold that it does not. First, there is nothing in section 627.727(1), Florida Statutes (Supp.1992), which requires contact with anything. In its relevant part, it is the simplest of statements, providing:
(1) No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
In Brown v. Progressive Mutual Insurance Co., 249 So.2d 429 (Fla.1971), the supreme court quashed the opinion of the district court of appeal and remanded with instruction to reinstate the trial court's decision which voided a policy provision requiring physical contact between the insured or his vehicle and another vehicle. The court said with respect to the uninsured motorist statute:
The purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.
It added:
The argument that the policy requirement of physical contact is reasonable is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, regardless of the actuality of physical contact. If twenty witnesses will swear they saw the accident happen, their testimony should not be deemed worthless, as it would be under the decision here for review.
Here, the policy plainly insures without there being a "hitting"; providing:
A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
....

*871 C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
....
3. Which is a hit-and-run-vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting: ....

(Emphasis added).
Yet, appellee argues that there still must be some "hitting or other contact" between the insured's vehicle and some other object or between the insured and some part of his vehicle. We reject its argument, given the policy language and the rationale of Brown, which was quoted with approval in Hartford Accident & Indemnity Co. v. Novak, 83 Wash.2d 576, 520 P.2d 1368, 1372 (1974).
The second issue raised in paragraph 6; namely, whether the injured appellant was within the above policy definition of hit-andrun vehicle as being one "whose owner or operator cannot be identified," in turn raises two compound questions: (1) the meaning of "cannot be identified," and who determines same, and (2) whether the facts to establish non-identity are insufficient and who determines same.
Jones v. Utica Mutual Insurance Co., 463 So.2d 1153, 1157 (Fla.1985), held in answering the first:
It is well settled that the construction of an insurance policy is a question of law for the court. See Zautner v. Liberty Mutual Insurance Co., 382 So.2d 106, 107 (Fla. 3d DCA 1980).
Two out-of-state cases illustrate implementation of the above principle in hit-and-run cases. In Walsh v. State Farm Mutual Insurance Co., 91 Ill.App.2d 156, 234 N.E.2d 394 (1968), the court said:
The relevant portions of the insurance policy are as follows:
....
Uninsured Automobile  means: * * * a hit-and-run automobile as defined; * * *."
Hit-and-Run Automobiles  means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such "hit-and-run automobile"....

... The meaning of the phrase "cannot be ascertained" which is contained in the policy was a question of law for the trial judge. Sindelar v. Liberty Mut. Ins. Co., 161 F.2d 712 (7th Cir., 1947), [cert. denied, 332 U.S. 773, 68 S.Ct. 89, 92 L.Ed. 358 (1947)].
Id. at 397-98.
In Riemenschneider v. Motor Vehicle Accident Indemnification Corp., 20 N.Y.2d 547, 285 N.Y.S.2d 593, 232 N.E.2d 630 (1967), the insured did not feel pain until he got home following the accident. By a 4-3 majority, New York's highest court affirmed the accident as being within the policy's protection against a "hit-and-run driver," saying:
The statute setting up the procedure to be followed in "`hit and run' causes" (Insurance Law, Consol. Laws, c. 28, § 617) describes the driver of such as one "whose identity is unascertainable" or, in the terms of the following section (§ 618), "cannot be ascertained". The "declaration of purpose" of the statute (§ 600) includes protection for injury inflicted by "unidentified motor vehicles which leave the scene of the accident".
The endorsement in Valadares' insurance policy contained similar language defining the term "hit and run driver" as including a situation in which identity "cannot be ascertained". These statutory terms and the similar language of the policy endorsement are literally more inclusive than the term "hit and run driver" in colloquial understanding. The language encompasses situations where the operator is unidentified and has left the scene of the accident because there was then no reason to identify him, as well as an operator who actually prevents identification by leaving the scene.

An injured person who is not aware of his injury until it is too late to take steps to make the necessary identification is in *872 precisely the same situation of deprivation of remedy as he would be if he knew he was hurt but the other driver left the scene without opportunity to identify him. And it seems the purpose of the statute broadly to afford protection in any situation where a vehicle leaves the scene of accident without identity.
If a person sustains an injury and is not aware of it, the effective time when identification becomes important is when the injury manifests itself. If at that time the identity of the owner or operator cannot be ascertained, a reasonable construction of a statute having a beneficial and protective function ought to be to protect the injured person to whom other recourse against the carrier of the vehicle which caused the injury has now become impossible.
Id. at 594-95, 285 N.Y.S.2d 593, 232 N.E.2d 630 (emphasis added). Accordingly, we hold that any reasonable effort to identify commences with the awareness of injury. This is a question for the court to answer under Jones and Walsh.
The injured appellant here testified in his deposition as follows:
Q. And you said you drove on. Where did you go to?
A. We went to the Peppertree Plaza which is I would say about a mile or two from where we were. We had to run some errands at the Office Depot and got lunch at the L & J Diner.
Q. When  strike that. Did you ever attempt to follow after the vehicle that had stopped in front of you?
A. No, I didn't.
Q. Do you remember any of the letters or numbers of the tag?
A. No, I don't
Q. Do you know if it even had a Florida tag on it?
A. I wish I could say yes or no, but I can't.
....
Q. When you say you got out of the car would that have been at Peppertree Plaza?
A. Peppertree Plaza.
Q. And what was it that you were experiencing?
A. Neck pain, arm pain, starting to get a little bit of tingling in my right arm, starting to get some spasms in my neck.
Q. Did you mention that to either your wife or your brother?
A. Yes, I did.
Q. You were out  you said you went to Office Depot and then you went to have lunch?
A. I think we went to lunch first and then we went to Office Depot.
Q. Did you continue to have these sensations?
A. Yes, all through lunch.
That testimony leads to the second compound question; and in answer to that, Jones said:
However, it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court: "[w]hether a certain set of facts exists to bring a loss to the insured within the terms of a policy is an issue to be determined by the trier of fact." State Farm Fire & Casualty Co. v. Lichtman, 227 So.2d 309, 311 (Fla. 3d DCA 1969).
463 So.2d at 1157. Walsh said:
Whether or not the facts offered in evidence by plaintiff came within the provisions of the policy as legally construed was a question of fact for the court sitting as trier of the facts. I.L.P. Insurance § 571.[[2]]
234 N.E.2d at 398.
As the reader can see, the facts in this case are somewhat different than Riemenschneider. Here, the "hit-and-run" driver of the convertible turned into a gas station, and the injured appellant complained of pain when he stopped down the road in a shopping center. Under these circumstances, applying Jones, we conclude it was for the jury to decide when appellant became aware of his injury and whether upon becoming aware, he could identify the other driver. See also Marr Invs., Inc. v. Greco, 621 So.2d 447 (Fla. 4th DCA 1993). A trial court may resolve a jury question by summary judgment only when reasonable jurors could not *873 differ. Kohler v. Medline Indus. Inc., 453 So.2d 908 (Fla. 4th DCA 1984); Gordon v. City of Lauderhill, 462 So.2d 1218 (Fla. 4th DCA 1985). There is clearly no obligation of an injured person to chase hit-and-run drivers; and, hopefully, this opinion does not reasonably permit such interpretation.
Finally, we hold the following "corroboration" provision of the policy to be unenforceable in Florida as a matter of law:
If there is no physical contact with the hitand-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.
Corroboration is required by statute in Georgia. See Scott v. Allstate Ins. Co., 200 Ga. App. 296, 407 S.E.2d 492 (1991), upon which the trial court relied. There is no such statutory requirement in Florida. To afford protection to an insured fortunate enough to have witness passengers or eyewitnesses while depriving an injured insured from recovery because he may be driving alone, at night, with no witnesses available is inappropriate. There are ways to refute fraudulent claims without denying legitimate insureds their right to damages by unreasonable provisions.
OFTEDAL, RICHARD L., Associate Judge, concurs.
KLEIN, J., concurs in part and dissents in part with opinion.
KLEIN, J., concurring in part and dissenting in part.
I agree with the majority opinion in all respects except for the holding that there may be no coverage where the insured does not make a reasonable effort to identify the hit-and-run driver. I do not agree that the policy definition of an uninsured vehicle, as a "hit-and-run-vehicle whose operator or owner cannot be identified," requires such an effort.
It would have been a simple matter for the insurer to have included a provision in the policy which required an insured to make a reasonable effort to identify the negligent motorist. It could have defined such a motorist as one who "could not, with reasonable effort, have been identified," but did not do so. In the present case it is undisputed that the plaintiffs cannot identify the other motorist, and that, in my opinion, meets the policy definition, which is, at best, ambiguous. Under the majority's interpretation, an insured can wind up with no uninsured motorist coverage if a jury finds the insured negligent in incorrectly writing down the license plate number of the fleeing motorist or failing to chase him.
No court has held that there is a duty to identify except where a statute expressly requires it. See Simmons v. Motor Vehicle Acc. Ind. Corp., 44 A.D.2d 673, 354 N.Y.S.2d 642 (1974) and Hart v. Doe, 261 S.C. 116, 198 S.E.2d 526 (1973). In one of the cases cited by the majority, Walsh v. State Farm Mut. Auto. Ins. Co., 91 Ill.App.2d 156, 234 N.E.2d 394 (1968), the court refused to read into the policy a requirement that the insured attempt to identify the other motorist. In Mangus v. Doe, 203 Va. 518, 125 S.E.2d 166 (1962), the court was unwilling to read the requirement of due diligence in ascertaining identity into the uninsured motorist statute.
I am all for avoiding fraudulent claims, and I have no problem with the insurer arguing to the jury that this is one. In the absence of any provision in our uninsured motorist statute, or a clear requirement in the policy that the insured reasonably attempt to ascertain the identity of the other motorist, however, I am unwilling to make that a condition of recovery.
NOTES
[1] His deposition testimony was as follows:

Q. As you were approaching the intersection then at Riverside, can you describe what happened?
A. The vehicle in front of me slammed on his brakes, did not signal. I hit my brakes hard, I looked up into the rear view mirror, I saw the Saturn behind me, I saw the blue smoke, I heard a screech, saw it fishtail, but she didn't strike my car. I thought for sure she was going to hit me. My car came to a complete stop as did the car in front of me, as did the car behind me. He made a quick right turn into the Shell station. The Saturn sped around me, she gestured me with her finger, and then she went around me and made a right turn on Riverside Drive heading south, and then I proceeded through the intersection.
....
Q. Can you describe for me the mechanism of what happened when you put on your brakes with respect to your body particularly, what happened within the vehicle?
A. I had my hands on the wheel. When I saw his brake lights I realized how quickly he was decelerating, I hit my brakes hard to avoid the collision. I looked in the rear view mirror, and at that point I felt the car lurch forward and I went back. I heard a little pop in my neck and that was pretty much the extent of it. That was my posture.
Q. Did you strike anything within the vehicle?
A. No, I did not.
[2] 22 Illinois Law and Practice § 571 (1956)